**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Lee M. Berger and Alice A. Berger, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>*Plaintiffs*,<br>v.<br><br>Bank of America, N.A.; and BAC Home Loans Servicing, LP,<br><br>*Defendants*. | CIVIL ACTION NO. 10-11583-NMG<br><br>CLASS ACTION |
| Stanley Kolbe, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>*Plaintiff*,<br>v.<br><br>BAC Home Loans Servicing, LP; and Balboa Insurance Company,<br><br>*Defendants*. | CIVIL ACTION NO. 11-10312-NMG<br><br>CLASS ACTION |
| Susan Lass, as an individual and as a representative of the classes,<br><br>*Plaintiff*,<br>v.<br><br>Bank of America, N.A.; and BAC Home Loans Servicing, L.P.,<br><br>*Defendants*. | CIVIL ACTION NO. 11-10570-NMG<br><br>CLASS ACTION |

**PLAINTIFFS KOLBE AND BERGERS' COMBINED MEMORANDUM OF LAW IN OPPOSITION TO: (1) PLAINTIFF SUSAN LASS' MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER ON CONSOLIDATION; AND (2) PLAINTIFF SUSAN LASS' MOTION TO DEFER APPOINTMENT OF "INTERIM LEAD COUNSEL", OR IN THE ALTERNATIVE, FOR HYBRID APPOINTMENT OF INTERIM COUNSEL OR APPOINTMENT OF NICHOLS KASTER AS LEAD COUNSEL**

**I.     INTRODUCTION**

It has often been noted that, while class actions are essential to permit effective private enforcement of many types of claims, such actions also present unique temptations and hazards for the counsel involved, who must at all times ensure that they are litigating for the benefit of the class rather than their own. Events in these consolidated cases present an unfortunate example where counsel lost sight of the consequences of their actions for the clients they purport to represent. This has led attorneys who represent the Plaintiff Susan Lass ("Lass"), from the Minneapolis law firm, Nichols Kaster, PLLP ("Nichols Kaster"), to disclose the privately expressed opinion work product of fellow Plaintiffs' counsel to the Defendants; to redefine its putative class and to add a claim in a belated, ineffective effort to create arguments for reconsideration of the Court's Electronic Order of May 24, 2011 consolidating the above-referenced actions ("Consolidation Order"); and to seek a structure that would deprive the parties and the Court of the well-known litigation efficiencies that are plainly associated with consolidation and coordination of actions that Nichols Kaster concedes involve common questions of fact.

Neither those post-consolidation filings nor Lass' arguments provide any reason for this Court to reconsider its common-sense determination that consolidation of these actions pursuant to Fed. R. Civ. P. 42(a) was and is appropriate. Moreover, Nichols Kaster's conduct in these actions, as detailed in the Declaration of Edward F. Haber ("Haber Declaration" or "Haber Decl."), and in its recent filings in this consolidated action, demonstrates that this Court should appoint Shapiro Haber & Urmy LLP ("Shapiro Haber & Urmy") as sole interim lead counsel in this consolidated action. As this Court has previously noted – in the context of appointing Shapiro Haber & Urmy co-lead counsel in another case – the lead counsel appointment process

1

requires the Court to "consider whether that choice is well-calculated to protect the interests of the purported plaintiff class." *See Coopersmith v. Lehman Broth., Inc.*, 344 F. Supp. 2d 783, 790 (D. Mass. 2004) (Gorton, J.) (citations omitted). In light of Nichols Kaster's conduct discussed herein, it would not be in the interests of the class to appoint Nichols Kaster lead or even co-lead counsel. Plaintiff Lass' motions should be denied; the Court should not reconsider its consolidation of these actions and Shapiro Haber & Urmy should be appointed interim lead counsel of this consolidated action.

## II.     FACTUAL BACKGROUND

The motions at issue here are:

1. Plaintiff Susan Lass' Motion for Reconsideration of this Court's Order on Consolidation (Doc. No. 27[1]) ("Reconsideration Motion"); and

2. Plaintiff Susan Lass' Motion to Defer Appointment of "Interim Lead Counsel", or in The Alternative, For Hybrid Appointment of Interim Counsel or Appointment of Nichols Kaster as Lead Counsel (Doc. No. 34) ("*Lass* Lead Counsel Motion").

Both motions should be viewed through the lens of Shapiro Haber & Urmy's repeated efforts to work cooperatively with Plaintiff Lass' counsel, Nichols Kaster, and that firm's evident disinterest in efficient coordination.

For five weeks prior to filing the *Berger* and *Kolbe* Plaintiffs' Motion for Consolidation and Appointment of Interim Lead Counsel (Doc. No. 16) ("Motion for Consolidation"), Shapiro Haber & Urmy partner Edward Haber engaged in repeated efforts to work cooperatively with Nichols Kaster to consolidate and join in the prosecution of the cases at issue here, going well beyond the requirements of Local Rule 7.1. Those efforts are detailed in the Haber Declaration

---

[1] All references are to the *Berger* Docket, unless otherwise noted.

2

at ¶¶ 7-25.  Mr. Haber made these repeated efforts because four decades of litigation experience have taught him what common sense suggests:  it is far more efficient and effective for plaintiffs' counsel in overlapping class actions to work together rather than in an uncoordinated, competing fashion.  Failure by plaintiffs' counsel to coordinate their activity practically ensures inefficiency, and potentially provides opportunities for defendants to exploit inconsistent or divergent positions taken by various class counsel.  *See* Haber Declaration at ¶ 8.  As a result, Mr. Haber and his partner called and e-mailed Nichols Kaster attorneys on multiple occasions over a five-week period in an effort to discuss and agree on coordination of the *Berger*, *Kolbe* and *Lass* cases (collectively "the Actions").  *Id.* at ¶¶ 7-25.

Unfortunately, Nichols Kaster failed over the course of more than a month to even provide Mr. Haber with a response – positive or negative – to his suggestion that the two firms jointly seek consolidation and co-interim lead counsel appointment.  Despite the shrill tone of its opposition to consolidation, Nichols Kaster had over a month to advise Mr. Haber as to its position regarding consolidation, and it never did so.  *Id.* at ¶¶ 7-25.  Indeed, the first substantive response by the Nichols Kaster firm was its recently filed strident submissions.

Shapiro Haber & Urmy filed the Motion for Consolidation on May 20, 2011.  The motion was allowed on May 24, 2011.  Electronic Order dated May 24, 2011.  In apparent response to the Motion for Consolidation and its allowance by the Court, on May 27, 2011, Nichols Kaster filed Plaintiff Susan Lass' First Amended Complaint on behalf of the Plaintiff Lass.  (Doc. No. 24) ("*Lass* Amended Complaint").

In the original *Lass* complaint, Nichols Kaster had defined a "Massachusetts Class" as including "all persons who have or had loans or lines of credit with Defendants secured by their property and were required to purchase or maintain flood insurance on their property in the State

3

of Massachusetts…" *Lass* Complaint (Doc. No. 1 in *Lass* Action) at ¶ 32.  This original class definition in *Lass* would have included some members of the *Berger* class, including the *Berger* Plaintiffs themselves, because Defendants forced them to obtain additional flood insurance on their home in Massachusetts.  In the *Lass* Amended Complaint, Nichols Kaster abandons the "Massachusetts Class" and creates instead the "Over-Insurance Class" and with a completely different definition.[2]

This new definition would no longer include the *Berger* Plaintiffs and arguably would have no overlap with members of the class in *Berger* and *Kolbe*.  Not surprisingly, the Nichols Kaster firm now argues that this lack of overlap of the class definitions is a reason why the Court should reconsider its Consolidation Order.[3]

## III. ARGUMENT

### A. Applicable Standard For A Motion For Reconsideration

"Motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change

---

[2] The "Over-Insurance Class" is defined as:

> All persons (1) who were required by Defendants, on or after April 1, 2005, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of the improvements to their property, as a condition of any residential mortgage loan secured by residential property in the United States, (2) who were not required to purchase or maintain flood insurance in such amounts upon origination of their mortgage loan; and (3) whose mortgage agreements fail to define the amount of flood insurance coverage required by the lender in interest to the mortgage and fail to provide that the lender may change its insurance requirements during the term of the loan.

Doc. No. 24 at ¶ 45.

[3] Similarly, the purported *Lass* Amended Complaint added a claim for breach of fiduciary duty and Lass argues that is another reason the Court should reconsider consolidation.

in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). Here, there is no change in circumstances or manifest injustice that warrants reconsideration.[4] Indeed, the only purportedly changed circumstance is an amended complaint filed by Nichols Kaster in which the firm has made artful changes to its pleading in an effort to undo consolidation. Obviously such a strategic effort by counsel does not warrant reconsideration of a prior justified Order of this Court.

B.   **Consolidation Of The Actions Is Appropriate.**

Even were the Court inclined to reconsider its Order consolidating the Actions, such reconsideration would only lead the Court to conclude that the Order was correct in the first instance. At issue in all three cases is Defendants' practice of force-placing flood insurance in violation of the terms of the Plaintiffs' mortgage agreements and in amounts that exceed the amounts required by the original lenders. As set forth in the Memorandum of Law in Support of *Berger* and *Kolbe* Plaintiffs' Motion for Consolidation and Appointment of Interim Lead Counsel (Doc. No. 17) ("Consolidation Memo"), the Actions involve common Defendants,[5] common questions of law, and common questions of fact concerning Defendants' practice of requiring hazard and/or flood insurance coverage in excess of the coverage amounts required by

---

[4] "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006) (citing 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)). Moreover, in making that determination, the "district court has substantial discretion and broad authority to grant or deny such a motion." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81 (1st Cir. 2008) (citing *United States v. 5 Bell Rock Rd.*, 896 F.2d 605, 611 (1st Cir. 1990)).

[5] Bank of America, N.A. is a Defendant in the *Berger* and *Lass* cases; BAC Home Loans Servicing, L.P. is a Defendant in all the Actions, and Balboa Insurance Company, a former affiliate of Bank of America, N.A., is a Defendant in the *Kolbe* action and was intimately involved in the conduct at issue in all three cases.

the mortgage agreements.  Consolidation Memo at 6-9.[6]  Consolidation of the Actions thus furthers judicial economy and conserves the resources of the parties and was justified.  *See id.* at 9-10; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 & n.10 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *see also* MANUAL FOR COMPLEX LITIGATION ("Manual") § 10.123, 11-12 (4th ed. 2004) ("Pretrial proceedings [in pending related cases or case that may later be filed in the same court] should be coordinated or consolidated under Federal Rule of Civil Procedure 42(a). . . .").

Ignoring the obvious factors supporting consolidation of the Actions, Nichols Kaster makes essentially three arguments against consolidation: (i) that there are no common questions *of law* between the Actions; (ii) that consolidation is inappropriate because the *Lass* case asserts three additional causes of action not alleged in *Berger* and *Kolbe*, and (iii) that consolidation would prejudice Lass.  None of these arguments are accurate or persuasive.

### 1. The Common Questions of Fact That Lass Concedes Exist Justify Consolidation of the Actions.

Fed. R. Civ. P. 42 provides that consolidation may be appropriate where actions involve common questions of law **or** fact.  *See Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 340 (D. Mass. 2005) (threshold inquiry is whether cases involve "common issues of fact **or** law") (emphasis added).  In their Consolidation Memo, the *Berger* and *Kolbe* Plaintiffs' identified numerous corresponding allegations in the *Berger*, *Kolbe* and *Lass* complaints, demonstrating

---

[6] The *Berger* and *Kolbe* Plaintiffs will not burden the Court by repeating the arguments set forth in their Consolidation Memo, but rather simply incorporate those arguments by reference.

several common factual issues in the three cases.[7]  *Id*.  Plaintiff Lass concedes that "[i]t is indisputable that all three cases involve common facts about Defendants' requirements for flood insurance and its practices relating to the imposition of force-placed insurance."  Plaintiff Susan Lass' Memorandum of Law in Support of Her Motion for Reconsideration of This Court's Order on Consolidation ("Lass Reconsideration Memorandum") (Doc. No. 28) at 13.  Since, as noted, consolidation may be appropriate where actions involve common questions of law **or** fact, the concession is fatal to Plaintiff Lass' Reconsideration Motion.  Plaintiff Lass also fails to address the fact that considerations of judicial economy also warrant consolidation.

### 2. The Actions Also Involve Common Questions of Law.

#### a. Differing Contractual Language Does Not Undermine Consolidation

As set forth in the Consolidation Memo, the Actions involve both common questions of fact and common questions of law.  Consolidation Memo at 6-9.  Plaintiff Lass argues that the Actions do not involve common questions of law because the language in Lass' mortgage differs from the language in the Kolbe and Berger mortgages and the proposed class definitions are different.  Both arguments fail.

First, a review of the complaints in the Actions demonstrates that, despite differences in contractual language, there remain many common overlapping questions of law.  This has been

---

[7]  Plaintiff Lass argues, with no citation to any authority, that the common questions of fact she concedes exist are not likely to be central to the resolution of the Actions.  This argument is unpersuasive on its face, because the existence of common facts by definition renders duplicative discovery a near certainty – which is precisely why Rule 42(a) is phrased in the disjunctive.  Indeed, new allegations contained in Lass' First Amended Complaint, filed after the Court consolidated the Actions, only exacerbate the problem.  Lass has now added allegations pertaining to Balboa Insurance Company, a Defendant in *Kolbe*, meaning that duplicative discovery against Balboa (as well as the other Defendants) is now a virtual certainty absent consolidation.  *See, e.g.*, *Lass* First Amended Complaint (Doc. No. 24) at ¶¶ 33-35, 59-60.

demonstrated in the Motion for Consolidation. It is thus not surprising that differences in the language of the contracts generally are not sufficient to defeat consolidation of actions involving other common questions of law or fact. *Cf. Aetna Cas. and Sur. Co. v. L'Energia, Ltd. Partnership*, No. 96-10098-GAO, 1996 WL 208497, *3 (D. Mass. March 4, 1996) (denying motion to sever consolidated arbitrations, noting that disputes all focus on common facts and issues, "despite the differing contractual obligations of the parties"); *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 359 (Ky. App. 2007) ("Although each homeowner's claims arose from separate contracts, we agree with the trial court that all of their claims involved common questions of law and fact. Furthermore, separate trials would have involved repeated litigation involving the same facts and evidence. We conclude that the trial court properly exercised its discretion in consolidating these actions").

Second, despite Plaintiff Lass' contention to the contrary, *Lass* is not the only case that involves the issue of whether Defendants were permitted under the mortgage agreements to increase the insurance coverage over and above that initially required under the mortgages. Indeed, that very same issue has been briefed by the parties in the *Kolbe* action. In seeking dismissal of the *Kolbe* Complaint, the Defendants argued that Kolbe's mortgage allows them to increase the amount of flood insurance that they require above the amount of flood insurance that was initially required when the mortgage was entered into. (Defendants' Memorandum in Support of Defendants' Motion to Dismiss, *Kolbe* Doc. No. 12). In opposition to the Motion to Dismiss, Plaintiff Kolbe has advocated the precise position advanced by Plaintiff Lass in her action – that the similar contractual language does not permit the Defendants to increase the amount of flood insurance that they require above the amount of flood insurance that was

initially required when the mortgage was entered into.  *See* Plaintiff's Opposition to Defendants' Motion to Dismiss at 10-11 (*Kolbe* Doc. No. 16).

### b. The Changed Class Definition In the *Lass* Amended Complaint Does Not Warrant Reconsideration of Consolidation.

Plaintiff Lass' contention (for which she again cites no authority) that consolidation is inappropriate because the Actions – following Nichols Kaster's post-consolidation attempt to redefine the class in *Lass* – now do not have overlapping class definitions, is also without merit.  Courts routinely consolidate actions involving different proposed classes.  *See., e.g.*, *Amador v. Logistics Express, Inc.*, No. 10-4112-GHK, 2010 WL 3489038, *1 (C.D. Cal. Aug. 27, 2010) ("[t]hough the class definitions and claims somewhat differ, the numerous common legal questions presented warrant consolidation"); *cf. also Miller v. Ventro Corp.*, No. 01-cv-1287, 2001 WL 34497752, *3-5 (N.D. Cal. Nov. 28, 2001) (holding consolidation of bondholder's and stockholder's actions appropriate despite alleged differences in class periods, remedies sought and evidentiary burdens because cases involved similar factual allegations); *In re Cendant Corp. Litigation*, 182 F.R.D. 476, 478 (D.N.J., 1998) ("neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated.  Rule 42 requires only 'a common question of law or of fact;' … Courts which have addressed the issue have held that differing class periods alone will not defeat consolidation or create a conflict").[8]

---

[8] One reason courts do not permit differing class definitions to deter consolidation is that it is not uncommon for class definitions to change during the course of discovery.  *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 n.5 (N.D. Ga. 1991) ("The act of refining a class definition is a natural outcome of federal class action practice. . . . a plaintiff's original class definition is often framed on the basis of little, if any, discovery, to be opposed by defendants who have a wealth of information concerning the industry.  It is not surprising that plaintiffs have revised the class definition to reflect the progress of discovery").  There is, of course, the possibility that class definitions will change again in this action as well.

Moreover, in the particular circumstances presented here, Plaintiff Lass' reconsideration motion, premised on her amendment to her complaint <u>after</u> consolidation was allowed by this Court strongly counsels against reconsideration of the Consolidation Order.  Reconsideration of the Consolidation Order under these circumstances would invite and encourage counsel in other cases to also attempt to game the system in this manner.  This would obviously not be a message the Court would want to send.

### c.  The Differences in the Causes of Action Do Not Warrant Reconsideration of the Consolidation Order.

Nichols Kaster next argues that reconsideration of the Consolidation Order is appropriate because the *Lass* Amended Complaint asserts causes of action not pled in *Berger* or *Kolbe.*  This contention lacks any merit.[9]  All the Actions involve counts for breach of contract and breach of the implied covenant of good faith and fair dealing, which will all have common, if not identical, legal proofs and discovery.  Moreover, the additional causes of action also revolve around Defendants' common practice of forcing mortgagors to maintain more hazard and/or flood insurance coverage than is required by their mortgage agreements, meaning that their addition is unlikely to change the discovery to be undertaken.  Indeed, the additional inquiries that Plaintiff Lass says will be necessary for her additional causes of action (*i.e.*, Defendants' escrow practices) are similarly involved in the *Berger* and *Kolbe* actions.  *See Berger* Complaint at ¶¶ 3,

---

[9]  Once again, Plaintiff Lass and Nichols Kaster cite absolutely no authority for their argument here.  This is not surprising: courts typically consolidate related cases even when some of the cases involve different causes of action.  *See, e.g.*, *Caronia v. Hustedt Chevrolet*, Nos. 05-cv-3526, 05-cv-4148, 05-cv-4149, 05-cv-4230, 2009 WL 5216940, *5 (E.D.N.Y. Dec. 29, 2009) ("there are differences in the causes of action.  But such differences 'do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law and the differences do not outweigh the interests of judicial economy served by consolidation.'") (quoting *In re Bank of America Corp. Securities, Derivative and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y.2009) and *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y.2007)).

29-32 (discussing Defendants' practice of force-placing insurance and deducting amount of additional insurance from escrow accounts); *Kolbe* Complaint at ¶¶ 3, 15, 31 (same).

### d. Consolidation Will Inflict No Cognizable Prejudice On Lass.

Plaintiff Lass' final contention is that she is prejudiced by consolidation of her case with *Berger* and *Kolbe*. Lass Reconsideration Memorandum (Doc. No. 28) at 11-12. This entire "prejudice" argument is premised on the contention that Mr. Haber, counsel in *Berger* and *Kolbe*, purportedly characterized Lass' claims as "weak" during a private conversation with counsel for *Lass*. Not only does this argument fail, but the disclosure of Mr. Haber's attorney work product opinion demonstrates that Nichols Kaster should not be appointed to a leadership role in this consolidated action.

First, as detailed in the Haber Declaration, Nichols Kaster mischaracterizes what Mr. Haber said to them. Mr. Haber ventured his (attorney work product) opinion that the contractual claims in *Lass* are weaker compared to the contractual claims in *Berger*, *Kolbe* and *Wulf*[10], but did not say, and does not believe, that Plaintiff Lass does not have a viable claim. *See* Haber Declaration at ¶¶ 15-18. Indeed, as noted above, the *Kolbe* case presents, *inter alia*, the same legal issue as *Lass*, and Plaintiff Kolbe, represented by Mr. Haber, has advocated the precise position advanced by Plaintiff Lass in her action. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss at 10-11 (*Kolbe* Doc. No. 16).

Significantly, while not reflected in any of the Declarations of attorneys Lukas, Richter, Bailey and Drake, in Plaintiff Lass' Reconsideration Memorandum, Nichols Kaster accurately states that: "counsel for the *Berger* and *Kolbe* Plaintiffs have already characterized Plaintiff

---

[10] *Wulf v. Bank of America, N.A., et al.*, No. 10-CV-05176-MAM, pending in the United States District Court for the Eastern District of Pennsylvania. Nichols Kaster represents the Plaintiff in that action.

11

Lass' contractual claims as 'weak' **in comparison to the claims of the *Berger* and *Kolbe* Plaintiffs."** *Id.* at 11, emphasis added.

Second, and more fundamentally, it is obvious that there is no prejudice created by the private, candid sharing of analyses of legal claims by counsel representing parties whose interests are aligned. To the contrary, such candid analysis by counsel works to the *benefit* of those represented, as various arguments and contentions are tested by counsel prior to being presented to and ruled upon by the Court. That is precisely why the Supreme Court ruled over 60 years ago that the work product of attorneys should be deemed confidential – in order to *encourage* counsel to conduct a rigorous analysis of their client's litigation position without fear of disclosure of that analysis to the other side. *See Hickman v. Taylor*, 329 U.S. 495 (1947).

**The *only* prejudice Ms. Lass has suffered has been caused by her own counsel, who elected to submit in filings with the Court, and hence disclose to the Defendants and the Court, an inaccurate description of Mr. Haber's attorney work product opinion of the claims in the *Lass* action.** As stated in the Lass Reconsideration Memorandum: "There is no reason why Plaintiff Lass should be subjected to comparisons of the strength of her case with that of other Plaintiffs who have alternate contractual language." *Id.* at 11-12. But Plaintiff Lass has now been subjected to that comparison, in front of the Defendants and the Court, **by her own counsel's demonstrably poor judgment.**

Obviously, the argument that these events support reconsideration of consolidation is utterly without merit. Rather, these events demonstrate that the interests of all class members, including Ms. Lass, would be best served by the selection of Shapiro Haber & Urmy LLP as sole lead counsel in this action.

### C. Shapiro Haber & Urmy LLP Should Be Appointed Sole Interim Lead Counsel of the Consolidated Action.

Likely aware that its arguments for reconsideration of the Consolidation Order are unpersuasive, Nichols Kaster makes a number of proposals aimed at providing the firm with a lead role if the Consolidation Order stands. It does so without regard to the impact of those proposals on the orderly and efficient litigation of this consolidated action. The firm alternatively argues as follows:

(1) First, Nichols Kaster argues that appointment of lead counsel should be "deferred" (leaving Nichols Kaster representing Lass and Shapiro Haber & Urmy representing the Bergers and Kolbe). Frankly, this simply makes no sense and reflects a complete lack of understanding of the purposes of consolidation and lead counsel appointments. This proposed "solution," of course, does not really involve consolidation at all, and would address none of the concerns regarding duplicative discovery and overlapping and unnecessary expenditures of litigant and Court resources that animate Fed. R. Civ. P. 42(a) in the first place. The suggestion would confer no benefit on anyone involved in this litigation – except Nichols Kaster.

(2) Second, Nichols Kaster advocates a "hybrid" lead counsel appointment in which, even though the actions are "consolidated," Nichols Kaster is lead counsel for the *Lass* action and Shapiro Haber & Urmy is lead counsel for the *Berger* and *Kolbe* actions. As with their "deferral" proposal, this proposal also does not really involve consolidation at all, and would address none of the concerns regarding duplicative discovery and overlapping and unnecessary expenditures of litigant and Court resources that animate Fed. R. Civ. P. 42(a) in the first place. Again, the suggestion confers no benefit on anyone involved in this litigation – except Nichols Kaster.

(3)  Third, Nichols Kaster argues that it should be appointed sole lead counsel.  This is really a startling suggestion.  Three cases have been consolidated here.  Shapiro Haber & Urmy filed the first, *Berger*, in September 2010.  It filed the second, *Kolbe*, in February 2011, as a related case to *Berger* pursuant to Local Rule 40.1(G)(2).  The Defendants answered the *Berger* complaint, and the Defendants' Motion to Dismiss the *Kolbe* complaint is fully briefed and awaiting a hearing before Magistrate Judge Sorokin to whom the motion has been referred for a Report and Recommendation.  Shapiro Haber & Urmy has also joined issue with the Defendants on Plaintiffs' Motion for Entry of an Order as to the Preservation of Documents and Electronically Stored Information (Doc. No. 12 in *Berger* and Doc. No. 13 in *Kolbe*) which is fully briefed.  In contrast the *Lass* action was filed on April 1, 2011.  Even though it was obviously related to *Berger* and *Kolbe*, as that term is defined in Local Rule 40.1(G)(1), Lass' counsel did not file it as related, and inexplicably, also did not assent to the Defendants' Motion for Case Reassignment Pursuant to Local Rule 40.1(I) (*See Lass* Doc. No. 18, Local Rule 7.1(A)(2) certificate).  (Judge Young, to whom the *Lass* case was initially drawn, allowed that motion by Electronic Order on May 24, 2011 and ordered the *Lass* action transferred to Judge Gorton).  No other activity has taken place in the *Lass* case, other than the above-discussed post-consolidation filing of an amended complaint.

In light of the history of these actions, Shapiro Haber & Urmy's experience and expertise prosecuting class actions,[11] and the active role that Shapiro Haber & Urmy has played in these

---

[11] As set forth in detail at pages 10-13 of the Consolidation Memo (Doc. No. 17), Shapiro Haber & Urmy is a highly regarded litigation firm that has been appointed lead or co-lead counsel in literally dozens of actions in the past, *See Coopersmith*, 344 F. Supp. 2d at 790 (D. Mass. 2004); Firm Resume of Shapiro Haber & Urmy LLP ("Shapiro Firm Resume"), attached as Ex. A to Consolidation Memo.  Shapiro Haber & Urmy's attorneys, many of whom have been recognized as among the best in Massachusetts, are (and have been in the past) easily the match of the best lawyers at the largest law firms around the nation.  *See* Shapiro Firm Resume, at 1-5.

cases thus far, there is no basis whatsoever for the suggestion that Nichols Kaster be appointed sole lead counsel in the consolidated action.

(4) Finally, Nichols Kaster's last, fall-back suggestion is that it be appointed interim co-lead counsel along with Shapiro Haber & Urmy. Of course, that was the structure advocated by Mr. Haber during his repeated efforts to work cooperatively with the Nichols Kaster firm. However, the subsequent action by the Nichols Kaster attorneys of publicly disclosing and hence sharing with the Defendants, an incomplete version of Mr. Haber's privately expressed analysis of Plaintiff Lass' claims raises serious doubts about the advisability of a co-lead counsel arrangement here. As discussed above, that disclosure was potentially highly prejudicial to both Mr. Haber's client Kolbe, and the class he seeks to represent and to Nichols Kaster's own client Ms. Lass.[12] This disclosure sufficiently calls into question the judgment of the Nichols Kaster attorneys here such that Shapiro Haber & Urmy now opposes that firm's selection as a co-lead counsel.

Nichols Kaster makes two primary contentions in support of its inclusion in a co-lead structure. First, the firm argues that Plaintiff Lass will be prejudiced if her chosen counsel is not included in a leadership role. This argument can be summarily dismissed: lead counsel firms are regularly appointed in class action litigation, and this process necessarily means that not all plaintiffs get their choice of lawyer as lead of a class action. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 01-12257-PBS, 2008 WL 53278, *2 (D. Mass. Jan. 3, 2008) ("presiding judge has a fiduciary obligation to the plaintiff class to pick an effective and trustworthy lead

---

[12] The prejudice associated with Nichols Kaster's disclosure should not be underestimated. It is highly likely that they will be used, as often as possible, by the Defendants throughout this litigation, to the detriment of the Plaintiffs Kolbe and Lass and the class members they seek to represent in this consolidated action. It is most unfortunate that Nichols Kaster did not consider this reality prior to making the disclosure.

15

counsel team . . . .  In the leadership role determination, no individual plaintiff's choice of lawyer is at stake."). Indeed, Nichols Kaster's argument, if accepted, would require the Court to appoint as co-lead counsel *all* of the firms that *any* plaintiff wishes to serve as a lead counsel. This obviously unacceptable result would, in large class actions, result in dozens of co-lead counsel that would serve to thwart rather than further the goal of efficient litigation of class actions.[13]

Nichols Kaster's second argument is that it should be afforded a leadership position because it is more familiar with the claims alleged in these types of actions than Shapiro Haber & Urmy. This argument is wholly unpersuasive: both Shapiro Haber & Urmy and Nichols Kaster have filed claims against Bank of America and its affiliates arising from the insurance practices challenged in these litigations, and both firms have pursued those claims against motions to dismiss. That is precisely why Shapiro Haber & Urmy initially took the position that a co-leadership structure was appropriate.

Now, however, the determinative factor in the lead counsel appointment decision is the actions taken by the firms *in this litigation*. Nichols Kaster has systematically engaged in a course of conduct focused more on ensuring the firm's position in this litigation than on serving the interests of the putative class members. Nichols Kaster's failure for weeks to even make time to discuss cooperation between Nichols Kaster and Shapiro Haber & Urmy; its (incomplete) disclosure of Mr. Haber's privately conveyed legal analysis of the *Lass* action; and its attempt to amend the *Lass* complaint to create arguments against consolidation; all suggest that a co-lead

---

[13] In any event, Plaintiff Lass clearly does not believe that she would not be well represented by Shapiro Haber & Urmy as interim lead counsel because she attests in her Declaration that she intends "to move forward with my claims on behalf of the class regardless of who the Court appoints as 'interim' counsel for the class of borrowers like me." *See* Declaration of Susan Lass (Doc. No. 33) at ¶ 8.

counsel structure would not be in the interests of the orderly, efficient and effective prosecution of this consolidated action on behalf of the class.

## IV.   CONCLUSION

For the foregoing reasons and those previously set forth in the Consolidation Memo, Plaintiff Lass' motions should be denied in their entirety, the Actions should remain consolidated and the Court should appoint Shapiro Haber & Urmy LLP interim lead counsel in the Actions.

Dated: June 7, 2011                                   Respectfully submitted,

/s/ **Edward F. Haber**
Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO# 549049)
Robert E. Ditzion (BBO# 660962)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA  02109
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
rditzion@shulaw.com

### Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 7, 2011.

/s/ **Edward F. Haber**
Edward F. Haber (BBO# 215620)