**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Lee M. Berger and Alice A. Berger, Individually and on Behalf of All Other Persons Similarly Situated, | CIVIL ACTION NO. 10-11583-NMG |
| *Plaintiffs*, | CLASS ACTION |
| v. | |
| Bank of America, N.A.; and BAC Home Loans Servicing, LP, | |
| *Defendants*. | |
| Stanley Kolbe, Individually and on Behalf of All Other Persons Similarly Situated, | CIVIL ACTION NO. 11-10312-NMG |
| *Plaintiff*, | CLASS ACTION |
| v. | |
| BAC Home Loans Servicing, LP; and Balboa Insurance Company, | |
| *Defendants*. | |
| Susan Lass, as an individual and as a representative of the classes, | CIVIL ACTION NO. 11-10570-NMG |
| *Plaintiff*, | CLASS ACTION |
| v. | |
| Bank of America, N.A.; and BAC Home Loans Servicing, L.P., | |
| *Defendants*. | |

**DECLARATION OF EDWARD F. HABER**

I, Edward F. Haber, hereby depose and say:

1. I am a partner in the Boston law firm Shapiro Haber & Urmy LLP ("Shapiro Haber & Urmy"). I submit this Declaration in opposition to Plaintiff Susan Lass' Motion for Reconsideration of this Court's Order on Consolidation and in opposition to Plaintiff Susan Lass' Motion to Defer Appointment of "Interim Lead Counsel", or in the Alternative, for Hybrid Appointment of Interim Counsel or Appointment of Nichols Kaster as Lead Counsel.

2. I was admitted to the practice of law in the Commonwealth of Massachusetts in 1970, and in this Court in 1971. I have specialized in the prosecution of class actions for several decades; since 1988 as a partner of Shapiro Haber & Urmy LLP (or its predecessor names).

3. I represent the Plaintiffs Lee and Alice Berger in the *Berger, et al. v. Bank of America, N.A., et al.* action. I prepared and filed the complaint in that action on September 17, 2010.

4. I represent the Plaintiff Stanley Kolbe in the *Kolbe v. BAC Home Loans Servicing, LP, et al.* action. I prepared and filed the complaint in that action on February 23, 2011.

5. The *Lass v. Bank of America, N.A., et al.* action was filed in this Court on April 1, 2011. I first learned that it had been filed on or about April 12, 2011, and that counsel for the Plaintiff was attorney Paul Lukas of the Minneapolis, Minnesota firm, Nichols Kaster, PLLP ("Nichols Kaster").

6. At this time I also knew that attorney Lukas and Nichols Kaster were counsel for the Plaintiff in the related *Wulf v. Bank of America, N.A., et al.*, No. 10-CV-05176-MAM action pending in the United States District Court for the Eastern District of Pennsylvania.

1

7. In light of all of the above facts, and my extensive experience prosecuting class actions, I decided I should open a dialogue with attorney Lukas regarding our similar, overlapping cases in this Court and the Eastern District of Pennsylvania.

8. As reflected in the Declaration of Paul J. Lukas ("Lukas Declaration" or "Lukas Decl.") (Doc. No 29), I called and spoke to Mr. Lukas on April 19, 2011. My partner Todd Heyman was with me on the call. While Mr. Lukas correctly characterizes the call as a "friendly effort to discuss pending cases against common defendants" (Lukas Decl. at ¶ 7), it was more than that. In that call I sought to open a dialogue with the goal of enabling Shapiro Haber & Urmy and Nichols Kaster to join forces to prosecute their cases against the Defendants efficiently and effectively. In my experience, such joint prosecution typically results in significant savings to class members, as it avoids the inevitable duplicative work that occurs when overlapping class actions are litigated by plaintiffs' counsel who do not cooperate with each other. It also prevents defendants from being able to exploit inconsistent or divergent positions taken by various class counsel. In my April 19, 2011 telephone conversation with Mr. Lukas and in my e-mail to him of that date, (which is the first of a chain of emails between Mr. Lukas and me, attached hereto as Exhibit 1[1]), I asked him to call me again as soon as he could to further our discussion.

9. The next day, April 20, 2011, I received an e-mail from Mr. Lukas in which he said: "Let's talk early next week, I…will be in town all next week." (Exhibit 1).

10. As of Friday, April 29, 2011, I had not heard back from Mr. Lukas, so I sent him an e-mail in which I said: "We need to talk about these cases soon. How about Tuesday afternoon?" (Exhibit 1).

---

[1] My April 19, 2011 e-mail is Exhibit 10 to the Lukas Declaration, but Mr. Lukas does not attach the rest of the e-mail chain.

11. On Monday, May 2, 2011, Mr. Lukas responded to my e-mail scheduling a telephone call with me for Tuesday, May 3, 2011, at 4:30 p.m. EST/1:30 p.m. PST. He also said in the e-mail that he would advise me if that time proved inconvenient for the telephone call. (Exhibit 1).

12. I called Mr. Lukas at 4:30 p.m. EST on May 3, 2011. I got his voicemail and left a message that I was calling per our agreement and asked that he get back to me promptly.

13. I finally heard from Mr. Lukas by e-mail on May 10, 2011, suggesting a telephone call the next day. (Exhibit 2).

14. Mr. Heyman, my associate Ian McLoughlin and I and Mr. Lukas and others from his office finally spoke again on May 11, 2011, nearly one month after I had first approached Mr. Lukas in an effort to effect the coordinated prosecution of our related cases.

15. In our May 11, 2011 telephone conversation, Mr. Lukas and I discussed numerous matters concerning the *Berger*, *Kolbe* and *Lass* actions pending in this Court and the *Wulf* action pending in the Eastern District of Pennsylvania. The descriptions of what was said in that telephone conversation by Mr. Lukas and me, as set forth in the Lukas Declaration at paragraphs 8-12; and the *verbatim* paragraphs 2-6 of the Declaration of Kai H. Richter (Doc. No. 30), the Declaration of Rebekah L. Bailey (Doc. No. 31) and the Declaration of E. Michelle Drake (Doc. No. 32), are incomplete and mischaracterize what I said about the claims in *Lass*.

16. Those descriptions of my May 11, 2011, conversation with Mr. Lukas are incomplete because Mr. Lukas and I discussed other issues regarding the cases pending in this Court and the *Wulf* action which they do not recount. However, I am not disclosing the content of those additional aspects of my conversation with Mr. Lukas because, as discussed below, I

believe the disclosure of those discussions to the Defendants disserves and prejudices the Plaintiffs and the putative class.

17. However, since, regrettably, Mr. Lukas and his colleagues have chosen to share, albeit not completely accurately, my privately expressed views about the claims in *Lass* with the Defendants and the Court, it is important for me to accurately set forth what I said to them. I do so in order to minimize any further prejudice to the class' claims from their improvident disclosure.

18. During our May 11, 2011 conversation I observed that, in my view, the contractual claims in *Lass* are weak compared to the contractual claims in *Berger*, *Kolbe* and *Wulf*. However, I did not say, and I do not believe, that Lass does not have a viable claim that the insurance coverage provision of her mortgage does not empower the mortgagee to increase the required flood insurance above the coverage required by the mortgage at the time the mortgage was entered into. Indeed, on behalf of the Plaintiff Kolbe, Shapiro Haber & Urmy has advocated that precise position opposing the Defendants' Motion to Dismiss the complaint in *Kolbe*. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss at pages 10-11 (*Kolbe* Doc. No. 16). Shapiro Haber & Urmy would likewise advocate that interpretation of the Lass mortgage as lead counsel in this consolidated action.

19. As Mr. Lukas and his colleagues indicate in their Declarations, in our May 11, 2011 telephone conversation, I advised Mr. Lukas that I believed that the *Berger*, *Kolbe* and *Lass* cases should be consolidated and proposed that we jointly move for their consolidation and for our two firms to be appointed interim co-lead counsel. And I told him that it would be advantageous if the motion was filed by the next day, May 12, 2011, so that the Defendants' response would be filed prior to the status conference in *Berger* that was then scheduled for May

26, 2011.[2]  That would have created the possibility that the Court would rule on the motion at the conference.  Mr. Lukas indicated that he could not make a decision on my proposal that quickly.  I do not recall that he explained why that was the case.  Mr. Lukas said he would get back to me.

20. Even though I believed that a motion to consolidate and appoint interim lead counsel should be filed promptly, as a courtesy to Mr. Lukas and in an effort to reach an agreement with him, I refrained from filing the motion to consolidate for another week to afford Mr. Lukas additional time to consider and respond to my suggestion that we work together on these cases.

21. On May 20, 2011, not having heard back from Mr. Lukas, I decided that the consolidation and interim lead counsel motion had to be filed, albeit without an agreement with Mr. Lukas and his firm.  In the absence of consolidation, three cases (then pending before two separate judges) were being litigated in this District in an uncoordinated manner, creating the near certainty of duplicative work and effort which, of course, would eventually be paid for by the class if the actions are successful.  In order to comply with both the letter and spirit of Local Rule 7.1, I called Mr. Lukas on that date to advise him that I would be filing the motion and again inviting him to jointly prosecute these cases against the Defendants.  I reached his voicemail and left him a message.

22. As reflected in Lukas Declaration Exhibit 12, in my voicemail message I advised him that I would be filing the consolidation and interim lead counsel motion, but I reiterated, twice, my continued interest in working cooperatively with him and his firm. According to Mr. Lukas' transcription I said: "I'm still open to trying to work something out with you" and "I'm

---

[2] The status conference was subsequently rescheduled for June 8, 2011.

5

still open to continuing our conversation. I think it's better that we join forces and deal collectively against Bank of America…"

23. Not having reached Mr. Lukas on the phone, I then, again on May 20, 2011, called Kai Richter, an associate at Nichols Kaster, and advised him that we would be filing the consolidation and interim lead counsel motion. He told me he was not authorized to tell me whether or not they would assent to the motion.

24. Finally, on May 20, 2011, I sent Mr. Lukas an email which is the start of the email chain attached hereto as Exhibit 3.[3] I explained that "having not heard from you again since we spoke on May 11, I have determined that I have to move forward" [and file the consolidation and interim lead counsel motion]. But I reiterated, once again: "I still believe it is in everyone's interest for us to work cooperatively on these cases against Bank of America. I remain open to our doing so. Please call me to discuss this." (Exhibit 3).

25. Mr. Lukas replied to my email saying, "…we will be opposing this motion with vigor." (Exhibit 3). He has never accepted my invitation for us to talk further about cooperatively prosecuting these cases.

26. As indicated above, I have specialized in the prosecution of class actions for several decades; since 1988 as a partner of Shapiro Haber & Urmy LLP (or its predecessor names). During those many years I have had innumerable conversations and meetings with counsel for plaintiffs who have filed identical or similar class action complaints as I have filed on behalf of my clients. In those conversations I would discuss numerous aspects of the cases, including the merits of various claims, possible litigation strategies and the organization of plaintiffs' counsel in order to establish a united team effort against the defendants. Some of

---

[3] It is also Exhibit 11 to the Lukas Declaration.

those discussions resulted in agreements to jointly prosecute the class actions; others did not. In some instances, competing lead counsel motions were filed by me and the counsel with whom I had spoken. Even when competing lead counsel motions were filed, however, I cannot recall ever having a lawyer with whom I had had such discussions disclose their contents to the defendants. In my experience, lawyers view those communications as confidential and they recognize that it is more important to prevent any prejudice to the class that could result from such disclosure than to use any such communications to obtain an advantage in their effort to be appointed lead counsel. Mr. Lukas and his colleagues are the sole exception that I can recall in over forty years practicing law.

27. I am surprised and troubled that Mr. Lukas, Mr. Richter, Ms. Bailey and Ms. Drake chose to disclose to the Defendants my private assessment of the claims in the *Lass* action. These disclosures plainly have the potential to prejudice the Plaintiffs and the class in this consolidated action, including their client, the Plaintiff Lass, and those similarly situated to her. And the fact that my statement to them was not quoted completely or accurately exacerbated the problem. I believe that the Nichols Kaster attorneys' decision to make those disclosures in their filings in this action reflects very poor judgment. Those disclosures and the other recent filings in this consolidated action by the Nichols Kaster firm since my telephone call with Mr. Lukas on May 11, 2011, have led me to conclude that my previous determination that Shapiro Haber & Urmy and Nichols Kaster should be appointed co-lead counsel was wrong. In light of all of the circumstances set forth herein, I believe the best interests of the Plaintiffs and the class would be served by the appointment of Shapiro Haber & Urmy as sole interim lead counsel in this consolidated action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Boston, Massachusetts
June 7, 2011

/s/ Edward F. Haber
Edward F. Haber (BBO# 215620)

### Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 7, 2011.

/s/ Edward F. Haber
Edward F. Haber