**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEE M. BERGER and ALICE A. BERGER, Individually and on Behalf of All Other Persons Similarly Situated<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P.,<br><br>　　　　Defendants. | CIVIL ACTION NO. 10-11583-NMG |

**MEMORANDUM IN SUPPORT OF BANK OF AMERICA'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Bank of America, N.A. ("Bank of America")[1] respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment. In response to a Chapter 93A demand letter sent by Plaintiffs Lee and Alice Berger ("Plaintiffs" or "the Bergers") after they initiated this action, Bank of America has fully satisfied Plaintiffs' requests for relief. Moreover, while it denies any liability in this matter, Bank of America has also modified its practices such that the conduct complained of by Plaintiffs will not again occur. Plaintiffs' alleged injury has now been remedied, their case is moot, their loan is paid off, and they lack standing under Article III of the U.S. Constitution to assert claims on their own behalf or on behalf of a class. This Court, therefore, should enter summary judgment in favor of Bank of America.

---

[1] As of July 1, 2011, Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP. Therefore, no separate mention of the entity formerly known as BAC Home Loans Servicing, LP is required.

**FACTUAL BACKGROUND**

This is another purported class action that addresses Bank of America's lender-placed flood insurance practices. The Court is of course familiar with both the facts and the applicable law. *See Kolbe v. BAC Home Loans Servicing, LP*, Civ. No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011); *Lass v. Bank of America N.A.*, Civ. No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011); Electronic Order Granting Motion to Consolidate Cases, *Berger v. Bank of America N.A.*, Civ. No. 10-11583 (D. Mass. May 24, 2011). To briefly summarize the allegations here, on August 18, 2003, Plaintiffs Lee and Alice Berger entered into a mortgage agreement with Fleet Bank, N.A. ("Fleet"), in which Fleet provided Plaintiffs with a loan for $130,000 secured by Plaintiffs' home in Buzzard's Bay, Massachusetts. Bank of America's Statement of Undisputed Material Facts ("SOF") ¶ 1. In 2004, Fleet merged into and became a part of Bank of America, N.A. Plaintiffs' loan was serviced by Bank of America from that time until the Plaintiffs paid off their loan in April, 2012. SOF ¶¶ 2, 22.

The Bergers' Property is located in a "Special Flood Hazard Area," as that term is defined by the Federal Emergency Management Agency ("FEMA"). SOF ¶ 3; 42 U.S.C. § 4012a(b)(1). Plaintiffs concede that they are required, by the terms of their loan agreement, to maintain flood insurance on their Property, and aver that they have done so since at least 2003. SOF ¶¶ 4-5. In 2010, Plaintiffs maintained flood insurance coverage in the amount of $143,000.00, which was greater than 110% of the unpaid principal balance on their loan.

However, Plaintiffs claim that, by the terms of their loan agreement, they could only be required to carry flood insurance equal to 110% of the unpaid principal balance.[2] Plaintiffs

---

[2] Although not relevant to this Motion, the Bergers' mortgage agreement contains language somewhat different from that of the Kolbes and Lass:

2

maintained hazard insurance in the amount of $374,000, which represented the replacement cost of their property. SOF ¶ 7. Per its flood insurance requirements policy, Bank of America required that the Bergers maintain at least $250,000 in flood insurance, which is the maximum required under the NFIA. *See* SOF ¶ 8. On June 3, 2010, Bank of America sent Plaintiffs a letter captioned "Notice of Flood Insurance Requirement," informing them that that the amount of flood insurance they carried on their property was insufficient under Bank of America policy, and that if they did not purchase additional coverage, Bank of America would purchase additional coverage on their property and charge the cost of that coverage to them. SOF ¶ 9. After sending a follow-up warning letter, on July 22, 2010, Bank of America sent Plaintiffs a third letter informing them that Bank of America had purchased an additional $107,000 in flood insurance coverage and charged the cost of that coverage, $280.88, to them. SOF ¶¶ 10-11, 14.[3]

---

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, **and in such amounts and for such period as Lender may require**. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this mortgage, plus one hundred ten percent (110%) of the unpaid principal balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

SOF ¶ 6 (emphasis added).

[3] Bank of America's purchase was consistent with FEMA's published Guidelines concerning flood insurance which state that Lenders should seek to have flood insurance equal to the replacement value of the improvements to their property, so as to better protect the interests of both lender and borrower. Specifically, the guidelines state: "To protect collateral interests, a lender should consider whether its collateral is adequately insured against flood damage. A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full RCV [Replacement Cost Value] . . ." FEMA Guidelines at 27-28 (emphasis added), SOF ¶ 12.

3

**PROCEDURAL POSTURE**

Plaintiffs seek to represent a class of borrowers whose loans are serviced by Bank of America and for whom Bank of America "purchased and charged the cost of . . . flood insurance coverage in excess of the coverage amounts required by the mortgage agreements." "Class Action Complaint" ("Complaint" or "Cmpl."), Docket Entry No. 1. ¶ 36.[4] Plaintiffs assert two state law claims in their Complaint on behalf of themselves and of the putative class: Breach of Contract (Count I) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II). *Id.* at ¶¶ 46-61. Plaintiffs contend they were damaged in the amount of $280.88 when Bank of America lender-placed additional flood insurance coverage on their Property. In addition to money damages, Plaintiffs seek injunctive relief to prevent Bank of America from requiring additional flood insurance on their Property in the future.

Nearly six months after Bank of America answered the Complaint, on April 8, 2011, Plaintiffs sent an M.G.L. c. 93A demand letter to Bank of America, seeking "full and appropriate relief for themselves and the Massachusetts Class Members . . ." SOF ¶ 16. Plaintiffs noted they had received a notice of renewal of flood insurance coverage. *Id.* Claiming that the notice was false and deceptive, Plaintiffs requested that Bank of America refrain from force-placing flood insurance on the Bergers' property, amend the notices sent to members of the putative class in Massachusetts, stop force placing insurance coverage in amounts greater than required by NFIA or terms of the mortgages, and refund the Bergers and members of the putative class in

---

[4] Plaintiffs initially asserted claims concerning both flood and hazard insurance, even though their Complaint is absent of any allegations that Bank of America ever force-placed hazard insurance on the Property. By letter, however, Plaintiffs have since stated that they will not be seeking certification of a class that includes issues relating to force-placement of hazard insurance. Plaintiffs' July 28, 2011 Letter, Ex. C.

Massachusetts the insurance premiums paid by them. In a May 6, 2011 letter back to Plaintiffs, Bank of America explained:

- That it would refund the Bergers the full amount of any flood insurance premiums previously charged to them in connection with the lender-placed coverage placed by Bank of America on their Property.
- That its current practices, as of May 6, 2011, regarding lender-placed insurance explicitly provide borrowers, such as the Bergers, the opportunity to "opt out" of its requirement of replacement-cost level flood insurance coverage if the borrower maintains coverage in the amount of the unpaid principal balance and affirmatively chooses to not maintain the additional coverage.[5]
- That Plaintiffs' April 8, 2011 letter would be treated as a request to "opt-out" of the requirement.

SOF ¶ 17. "Opting out" of Bank of America's replacement cost flood insurance coverage requirement is an option now provided to all borrowers with loans serviced by Bank of America, and is a standard part of Bank of America's correspondence with those borrowers located within Special Flood Hazard Areas. SOF ¶ 21. While Bank of America continues to recommend to its borrowers that they secure flood insurance coverage in an amount equal to the replacement value of their homes, Bank of America affirmatively provides borrowers with the opportunity to decline obtaining such coverage.

Plaintiffs have been fully recompensed for any alleged injury suffered as the result of Bank of America's lender placed insurance practices. On April 25, 2011, Bank of America

---

[5] The Bank changed this practice on August 19, 2010, before Plaintiffs sent their c. 93A demand letter. SOF ¶ 19.

provided Plaintiffs with a check for $93.58 to account for the increase in monthly payments paid by Plaintiffs during the time in which their lender-placed policy was in force. SOF ¶ 18. On May 12, 2011, Bank of America credited back to Plaintiffs' escrow account the full $280.88 initially charged for their lender-placed insurance. *Id.* On May 25, 2011, Bank of America sent Plaintiffs a check in the amount of $280.88. *Id.* at ¶ 19. These payments fully recompensed Plaintiff for any costs incurred due to the lender-placed insurance. Bank of America's records reflect that the check for $280.88 was never cashed, and on March 16, 2012, a second check was sent to Plaintiffs for the amount of $280.89. *Id.* at ¶ 20. Bank of America's records also show that Plaintiffs paid off their loan in April 2012. SOF 22. While Bank of America continues to deny any liability whatsoever for its prior conduct, Bank of America has changed its flood insurance procedures such that the conduct complained of by Plaintiffs no longer occurs.

## **LEGAL STANDARD**

Fed. R. Civ. P. 56(c) mandates the entry of summary judgment against a party who fails to show a genuine issue as to any material fact, thus enabling a court to decide the case as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The party opposing the motion can avoid the entry of summary judgment only by setting forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (lst Cir. 1988). The non-moving party cannot "'rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue.'" *Brown v. Armstrong*, 957 F. Supp. 1293, 1299 (D. Mass. 1997) (quoting *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989)).

**ARGUMENT**

**I.      Plaintiffs Have Been Afforded Complete Relief and Their Claims Are Now Moot**

Article III of the U.S. Constitution provides that federal courts must restrict exercise of their jurisdictional power to only those cases which present "'actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  As this Court has previously noted, "[t]he jurisdictional component of the mootness doctrine enforces the general principle that courts are barred from deciding cases in which they cannot provide a remedy." *In re Cambridge Biotech Corp.*, 214 B.R. 429, 431 (D. Mass. 1997) (Gorton, J.).  In this matter, the Court cannot provide Plaintiffs with any remedy beyond that which they have already requested and received from Bank of America pursuant to their M.G.L. ch. 93A letter.  As a result, Plaintiffs lack standing to pursue this case, either on their own behalf or on behalf of the putative class. *Wilson v. Sec'y of Health and Human Servs.*, 671 F.2d 673, 679 (1st Cir. 1982) ("ordinarily the mootness of the substantive claim of the named plaintiff in a purported but uncertified class action moots the entire case.").  Plaintiffs cannot establish any remedy awaiting them, nor can they demonstrate any reasonable fear of future injury.

In their Complaint, Plaintiffs contend that Bank of America's flood insurance coverage requirements were inconsistent with the terms of their loan, and caused them injury – in the amount of $280.88.  To remedy this perceived injury Plaintiffs pursued two courses of action.  First, they filed a complaint on September 17, 2010, asserting claims for breach of contract and the breach of the implied covenant of good faith and fair dealing.  Second, on April 8, 2011, Plaintiffs sent a demand letter pursuant to M.G.L. ch. 93A requesting relief for the same damages they allegedly incurred in connection with their Complaint.

Bank of America responded to Plaintiffs' Complaint by answering it and denying liability. In response to Plaintiffs' demand letter, however, Bank of America chose to satisfy the demand by fully refunding the $280.88 initially charged against Plaintiffs' escrow account as a result of the lender-placed insurance, and by providing Plaintiffs with a check for $93.58 to account for any charges in their monthly payments greater than what they would have been charged absent the additional coverage. Moreover, per Bank of America's opt-out policy, Plaintiffs are no longer required to maintain flood insurance coverage in excess of their outstanding principal balance.

Because of the "opt-out" policy, this is not a case where the conduct Plaintiffs complained of is "capable of repetition, yet evading review." It is not a situation where "'(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again'" *Turner v. Rogers*, 131 S. Ct. 2507, 2515 (2011) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *see also Eckl v. City of Boston*, 476 F. Supp. 1014, 1016-1017 (D. Mass. 1979) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (a case is moot if "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur (and) (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.").

Plaintiffs request for relief has been met. They do not have any injury, and, given that Bank of America has changed its policy and Plaintiffs have paid off their loan, SOF ¶ 22, have no reasonable fear of one in the future. Given this lack of current injury and expectation of future injury, Plaintiffs' claims are moot. *See Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (affirming dismissal of claim where defendants offered plaintiff "the full amount of

damages … to which [plaintiff] claimed individually to be entitled"); *Abrams v. Interco, Inc.*, 719 F.2d 23, 32 (2d Cir. 1983) (where individual plaintiff had received offer fully satisfying his claim court dismissed case saying, "there is no justification for taking the time of the court and the defendant in the pursuit of [a] minuscule individual claim[ ] which defendant has … satisfied."); *Murphy v. Equifax Check Services, Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999) (dismissing plaintiff's claim because defendant "agreed to give the plaintiff full relief"); *Damasco v. Clearwire Corp.*, 662 F. 3d 891, 894 (7th Cir. 2011) ( "a complete offer of settlement made prior to the filing for class certification moots the plaintiff's claim.") (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994)).  This action, therefore, must be dismissed.

## II.     Plaintiffs Cannot Avoid Mootness by Asserting Claims on Behalf of a Class

As Plaintiffs' individual claims are now moot, they lack the capacity to bring those claims on behalf of a putative class.  As the First Circuit has noted, even if "a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001).  Moreover, as this Court has noted, "'prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing'" to pursue a claim.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 79 (D. Mass. 2005) (Saris, J.) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996).

As the named plaintiffs here have been fully recompensed prior to class certification, they lack any continued stake in the outcome of the litigation, and dismissal of the action is appropriate. *See, e.g., Cicchetti v. Lucey*, 514 F.2d 362, 365 (1st Cir. 1975) (plaintiff could not continue action by amending complaint to state a class action after individual's claim was rendered moot); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3d Cir. 1992) (declining to consider class certification following settlement of individual claims). The Bergers chose to pursue redress from Bank of America outside of this litigation, before filing a motion for class certification. By seeking and receiving the relief they demanded, Plaintiffs have no injury to be redressed and their claims are therefore moot.

## CONCLUSION

For these reasons, Bank of America requests that this Court grant its Motion for Summary Judgment.

Dated: May 8, 2012

BANK OF AMERICA, N.A.; and BAC HOME LOANS SERVICING, L.P.,

By their attorneys,

/s/ Matthew G. Lindenbaum
John C. Englander (BBO# 542532)
Matthew G. Lindenbaum (BBO# 670007)
Dennis N. D'Angelo (BBO# 666864)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
mlindenbaum@goodwinprocter.com
ddangelo@goodwinprocter.com

**CERTIFICATE OF SERVICE**

      I, Matthew G. Lindenbaum, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 8, 2012.

Dated:  May 8, 2012                              /s/  Matthew G. Lindenbaum