**United States District Court**
**District of Massachusetts**

```
                                    )
LEE M. BERGER, ALICE A. BERGER,     )
         Plaintiffs,                )
                                    )
         v.                         )   Civil Case No.
                                    )   10-11583-NMG
BANK OF AMERICA, N.A., BAC HOME     )
LOANS SERVICING, L.P.,              )
         Defendant.                 )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative class action was brought by plaintiffs Lee and

Alice Berger ("the Bergers") against Bank of America, N.A.,

successor by merger to BAC Home Loans Servicing, LP ("BAC")

(collectively "Bank of America") for breach of their mortgage

contract and of the implied covenant of good faith and fair

dealing. The Bergers allege that defendants breached their

mortgage contract by requiring them to purchase more flood

insurance than was required under the terms of their mortgage.

## I.   **Factual Background**

In August 2003, the Bergers obtained a loan from Fleet

National Bank in the amount of $130,000 which was secured by a

mortgage ("the Mortgage") on their home in Buzzards Bay,

Massachusetts. Fleet was subsequently acquired by and merged

into defendant Bank of America. At the time that Bank of America

-1-

began servicing the loan the balance was approximately $120,585.

Plaintiffs' home is located in an area that the Federal
Emergency management Agency ("FEMA") has designated as
experiencing "special flood hazards." As a result, plaintiffs'
mortgage is subject to the National Flood Insurance Act, 42
U.S.C. §§ 4001-4129("NFIA"). NFIA prohibits federally-regulated
lenders from making, increasing, extending or renewing any loan
secured by real estate in a flood hazard area in which flood
insurance is available unless the property is covered by flood
insurance. 42 U.S.C. §§ 4012a(b)(1).

Paragraph 4 of the Mortgage also requires that plaintiffs'
maintain flood insurance, stating in relevant part that:

> Borrower shall maintain [hazard insurance] coverage in
> an amount equal to the smallest of: (a) the amount of
> any obligation having priority over this Mortgage, plus
> one hundred ten percent (110%) of the unpaid balance of
> principal and interest on the Note; or (b) the maximum
> insurable value of the Property, but in no event shall
> such amount be less than the amount necessary to
> satisfy any co-insurance requirement contained in the
> insurance policy; or (c) the maximum amount permitted
> by applicable law. If the Property is located in an
> area identified by federal officials as having special
> flood hazards and where flood insurance is available
> under the National Flood Insurance Act, Borrower will
> keep Property insured against loss by flood.

Plaintiffs allege that they maintained $143,000 in flood
insurance coverage, an amount in excess of 110 percent of the
outstanding principle balance. On June 3, 2010, Bank of America
sent plaintiffs a "Notice of Flood Insurance Requirement"

-2-

("Notice") requesting that plaintiffs obtain an additional
$107,000 in flood insurance as required by the Mortgage and/or
federal law.  According to the Notice if plaintiffs did not
obtain the additional flood insurance, Bank of America would
purchase the insurance for them ("force place") and charge the
cost of the premium to them.

On June 27, 2010, Bank of America sent plaintiffs a "Second
Notice of Flood Insurance Requirement" which again indicated that
plaintiffs must obtain the additional insurance.  On July 20,
2010, plaintiffs wrote to Bank of America and provided
documentation of their existing $143,000 in coverage.  On July
22, 2010, plaintiffs received a "Notice of Flood Insurance
Coverage" indicating that Bank of America had purchased an
additional $107,000 in flood insurance coverage and that the
premium for that coverage in the amount of $280.88 was to be
charged to plaintiffs.

Plaintiff's filed the present action in September, 2010.  On
November 22, 2010, Bank of America increased plaintiffs' Mortgage
payment from $875.27 to $937.68 per month to recoup the premium
for the additional flood insurance.  On March 8, 2011, Bank of
America sent plaintiffs a "Notice of Renewal of Flood Insurance
Coverage" indicating that it planned to renew the lender-placed
flood insurance policy and charge plaintiffs $561.75 for the
renewal premium.

-3-

Bank of America asserts that in August, 2010, it implemented an "opt-out" program which provided borrowers with the opportunity to decline lender-placed insurance in excess of that required under their mortgage. However, the March 8 letter did not inform plaintiffs of the opportunity to opt out of this additional insurance.

On April 8, 2011, plaintiffs sent Bank of America a demand letter pursuant to Mass. Gen. Law. Ch. 93A. In it plaintiffs requested:

> full and appropriate relief for [Plaintiffs] and the
> Massachusetts Class Members, including but not limited
> to: (a) Correcting the false and deceptive notices sent
> to the Massachusetts Class Members . . . ; (b) The
> immediate cessation by BAC of force placing flood . . .
> insurance coverage in amounts greater than required by
> the NFIA or the terms of the mortgage; and (c)
> Refunding to the Bergers and each Massachusetts Class
> Member the insurance premiums paid by them for flood .
> . . insurance coverage on their property in excess of
> the insurance coverage required by the NFIA or their
> mortgages.

On May 6, 2011, Bank of America responded to the demand letter indicating that it rejected the Chapter 93A claim and would make "no offer of settlement." The letter also indicated that Bank of America had recently instituted an "opt out" policy which provided borrowers with the opportunity to decline lender-placed insurance in excess of that required under their mortgage and that plaintiffs' demand letter would be treated as a request to opt out.

On March 16, 2012, Bank of America credited $280.88 to

plaintiffs escrow account. On April 5, 2012, Bank of America
issued a check to plaintiffs for $280.89 which plaintiffs did not
cash. On May 12, 2012, Bank of America refunded the full amount
of the lender-placed insurance premium charged to plaintiffs'
escrow account. On May 25, Bank of America sent another check in
the amount of $280.88 to plaintiffs to refund the full amount of
the lender-placed insurance premium. Plaintiffs did not deposit
that check.

    According to Bank of America, plaintiffs paid off the
balance of their loan in April, 2012.

## II. **Procedural History**

    This case was filed on September 17, 2010. On May 24, 2011,
the Court allowed a motion to consolidate the case with related
cases Kolbe v. Bank of America, et al. (No. 11-CV-10312) and Lass
v. Bank of America, et al. (No. 11-cv-10570). At a motion
hearing on June 8, 2011, however, the Lass case was severed but
the plaintiffs in the separate actions agreed to conduct joint
discovery. On August 10, 2011, the Court granted plaintiffs'
motion to file an Amended Complaint. Currently before the Court
are defendants' motion for summary judgment and plaintiffs'
motion to amend the Complaint to add an additional named
plaintiff.

## III. **Analysis**

### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.

-6-

O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

## B. Application

Defendants request that the Court construe their motion for summary judgment as a motion for partial summary judgment challenging only the Berger's standing.

Defendants argue that plaintiffs lack standing because defendants refunded plaintiffs' lender-placed insurance premium in response to the demand letter and furthermore that plaintiffs have since paid off their loan. Defendants also argue that the "opt out" policy now offered to all borrowers provides adequate relief to the putative class. As a result, defendants assert that, because the Court cannot provide plaintiffs with any remedy beyond those they have already requested and received from defendants, plaintiffs' injury has been remedied, their case is moot and they lack standing under Article III.

A case is moot only "if an intervening event 'makes it impossible for the court to grant any effectual relief.'" Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 468 (1st Cir. 2009)(quoting Gulf of Me. Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)). Here, the

-7-

Court agrees with plaintiffs that, by reimbursing plaintiffs'
insurance premium, defendants did not provide plaintiffs the
amount of relief they might obtain should they prevail at trial.
This is particularly true because plaintiffs sought relief for
all members of the putative class, not just themselves in both
their Complaint and demand letter. See e.g. Suk Jae Chang v.
Wozo LLC, CIV.A. 11-10245-DJC, 2012 WL 1067643 (D. Mass. Mar. 28,
2012).

Defendants assert that they have adopted an "opt-out" policy
that they believe adequately addresses plaintiffs' demands to
revoke the additional flood insurance requirement. Plaintiffs
have, however, raised genuine issues of fact as to whether an
"opt-out" is adequate relief, particularly given plaintiffs'
assertion that not all borrowers are actually provided with
notice of the "opt-out" policy and the affirmative burden that
opting out places on borrowers. As a result, the Court finds
that defendants have not satisfied all of plaintiffs' demands and
thus plaintiffs do not lack standing.[1]

## IV. **Motion For Leave to Amend the Complain to Add Donna Wade as a Named Plaintiff**

Plaintiffs request leave to amend the Complaint to add Donna
Wade ("Wade") as a named plaintiff. They assert that Wade has

---

[1] The fact that the Bergers have standing does not, however,
preclude defendants from challenging the Bergers suitability to
serve as representatives of any potential class at the class
certification stage.

identical claims to those of the Bergers because her mortgage
with Bank of America contained the same language requiring flood
insurance equal to 110 percent of her unpaid loan balance and she
received the same letters requesting that she carry additional
flood insurance.  Defendants have conceded that they do not
oppose the motion because Wade was subject to lender-placed
insurance prior to the institution of the "opt-out" policy.
Consequently, the Court will allow the addition of Wade as a
named plaintiff.

## ORDER

In accordance with the foregoing, the Motion for Summary
Judgment is **DENIED** and the Motion to File an Amended Complaint is
**ALLOWED**.

So ordered.

Nathaniel M. Gorton

Nathaniel M. Gorton
United States District Judge

Dated March 2|, 2013

-9-